**WALLING v. ROSE et al.     (No. 385.)**

Court of Civil Appeals of Texas. Eastland.
Jan. 6, 1928.

Rehearing Denied Feb. 3, 1928.

1. **Cancellation of instruments ⬤⟳24(2)—Vendors might not secure cancellation of deed as to portion of land conveyed, where they refused to return excess portion of consideration.**

Vendors might not secure cancellation of deed as to portion of land conveyed, where they refused to return portion of consideration which they claimed was in excess of agreed consideration.

2. **Equity ⬤⟳66—He who seeks equity must do equity.**

It is a maxim of equity that he who seeks equity must do equity.

3. **Appeal and error ⬤⟳930(3)—Where special issues respecting fraud and mutual mistake are neither requested nor submitted, appellate court will not presume that they were found favorably to appellees (Rev. St. 1925, art. 2190).**

In trial of suit to cancel portion of deed on ground of fraud and mutual mistake, submitted on special issues, where issues as to

fraud and mutual mistake are neither requested nor submitted, Court of Civil Appeals will not presume that such issues were found in favor of appellees under Rev. St. 1925, art. 2190, providing that upon appeal an issue not submitted and not requested is deemed as found by court in such manner as to support judgment, if there is evidence to sustain finding.

**4. Trial ☞351(2)—Defendant was not bound to request special issues respecting fraud and mutual mistake claimed by plaintiffs, and plaintiffs' failure to request issues or to object to charge was waiver of questions (Rev. St. 1925, art. 2190).**

It was not duty of defendant to request submission of special issues of fraud and mutual mistake on which plaintiffs based suit to cancel deed as to portion of land conveyed, and plaintiffs' failure to request submission of such issues or to object to charge because it failed to submit such issues was waiver of questions, notwithstanding Rev. St. 1925, art. 2190.

**5. Limitation of actions ☞99(2)—Where deed is obtained by fraud, vendors' cause of action to recover land does not accrue until cancellation of deed (Rev. St. 1925, art. 5509).**

Where deed is obtained by fraud, vendors' cause of action for recovery of land does not accrue until after cancellation of such deed, and limitation under 5-year statute of limitation (Rev. St. 1925, art. 5509) does not begin to run against cause of action until cancellation.

**6. Vendor and purchaser ☞238—Purchaser with notice, acquiring title from innocent purchaser succeeds to his rights.**

Purchaser with notice, who acquires title from innocent purchaser, succeeds to all the rights of such innocent purchaser.

**7. Vendor and purchaser ☞238—Purchaser obtaining title with notice, conveying to innocent third party and taking reconveyance, does not succeed to third party's rights as innocent purchaser.**

Rule that purchaser with notice, acquiring title from innocent purchaser, succeeds to all of his rights, is subject to exception that purchaser who acquires title with notice, conveys to innocent third party, and takes reconveyance, does not thereby obtain rights of third party as innocent purchaser.

**8. Limitation of actions ☞100(11)—Limitation will not run against suit based upon fraud until fraud is discovered or should be discovered by reasonable diligence.**

Limitation will not begin to run against suit which is based upon fraud until fraud is discovered or should be discovered in the exercise of reasonable diligence.

Appeal from District Court, Jones County; M. S. Long, Judge.

Suit by J. B. Rose, W. E. Rose, and another against J. R. Walling. The first named plaintiff was dismissed. From a judgment in favor of the remaining plaintiffs, defendant appeals. Reversed and remanded.

Frazier & Averitte, of Hillsboro, W. B. Ferrell, of Roby, and Coombes & Andrews, of Stamford, for appellant.

John D. Abney, of Hillsboro, and Thomas, Pope & Shapard, of Anson, for appellees.

HICKMAN, J. By a special warranty deed dated October 19, 1916, appellees W. E. Rose and Charlie Rose and their brother, J. B. Rose, conveyed to appellant their undivided interest in three tracts of land, two of the tracts being situated in Fisher county, and the third tract, the one involved in this suit, being situated in Jones county. The interest owned by each of the vendors in the deed was an undivided ⅟₄₈ interest, which was vested in them as grandchildren and heirs of Dr. J. H. Walling, deceased. The appellant is the son of Dr. J. H. Walling, deceased, and the half-brother of appellees' mother, also deceased. Ten years after the execution and delivery of this deed suit was instituted by the appellees W. E. Rose and Charlie Rose to avoid and cancel their said deed in so far as same purported to convey their interest in the Jones county tract. Their alleged cause of action against appellant was based upon mutual mistake and fraud. In general, the alleged fraud consisted in the claim that they had contracted to sell appellant their interest in the Fisher county land only, and that appellant had the deed prepared conveying to him their interest in both the Fisher county land and the Jones county land, representing to them that the deed embodied their contract, and that they executed said deed relying upon such representations. J. B. Rose was an original party plaintiff, but was, on his own motion, dismissed from the case.

The case was tried before a jury, only two issues being submitted, as follows:

"Question No. 1. At the time of the execution of the deed from the plaintiffs, Charley Rose, W. E. Rose, and J. B. Rose, to the defendant, J. R. Walling, did the plaintiffs in this case intend to convey to the said J. R. Walling their interest in the Jones County tract of land described in plaintiffs' petition? Answer yes or no.

"Question No. 2. If you have answered the foregoing interrogatory 'No,' then answer the following question: When did the plaintiffs in this case first discover that the Jones county land was included in said deed, or could have discovered it by the use of reasonable diligence? Answer by giving the approximate date."

To the first issue the jury answered, "No," and to the second issue it answered, "On or about September, 1926." Upon these answers the court rendered judgment in favor of appellees, setting aside and canceling their deed in so far as same purported to affect their title to an undivided ⅟₂₄ interest in the Jones county land above described, and awarding writ of possession. The appeal is from this judgment.

[1] Proposition 10 and the assignments to which it is germane present an error necessitating the reversal of this case. The question of law raised by this proposition is that appellees were in no position to maintain their suit in equity for the cancellation of their deed for fraud on the part of appellant, because they themselves refused to do equity. The evidence discloses that all of the estate left by Dr. J. H. Walling, deceased, was community property of himself and his second wife. Appellees' mother was the daughter of Dr. J. H. Walling and his first wife. The interest in the lands left by Dr. J. H. Walling, which descended to each of the appellees, was an undivided $\frac{1}{48}$. The two appellees thus inherited a $\frac{1}{24}$ undivided interest. After the death of their grandfather the appellees went from their home in Hill county to the home of appellant in Fisher county for the purpose of selling him all of their undivided interest in the estate of their grandfather. They testified that they would have been just as willing at that time to sell their interest in the Jones county land as they were the Fisher county land. The land was incumbered to the extent of $1 per acre for purchase money due the state. Appellees testified that their contract with their uncle, the appellant, was that appellant would pay them for their interest in the Fisher county land $6 per acre and assume the balance owing to the state of Texas; that the only reason they did not sell appellant their interest in the Jones county land was that appellant stated he did not wish to purchase it, but desired that all agree that this tract should remain undivided during the lifetime of appellant's mother and appellees' stepgrandmother, to be used by her as her homestead.

The testimony of appellant and his witnesses is that by the terms of the contract appellant purchased from appellees their entire undivided interest in the lands, both in Fisher county and in Jones county, at an agreed consideration of $9.50 per acre, and the assumption by appellant of the balance owing to the state. The undisputed facts are that appellant paid each of the appellees $190 for his interest in whatever land he purchased. There were 640 acres of land in Fisher county and 320 acres in Jones county, making a total of 960 acres. The interest of each appellee was 20 acres, and this amount of land at $9.50 per acre would amount to $190, the amount which each appellee testified he received. If, as testified by appellees, they sold only their interest in the Fisher county land, then they actually received $14.25 per acre for such interest. This was more than twice the amount which they testified they agreed to take therefor. The only explanation furnished us for this discrepancy by appellees is that appellant's wife made the calculation and evidently made an error,

whereby they were paid too much money for their interest in the Fisher county land.

Appellees made no tender in their petition of this excess payment, and testified that they had not tendered it back and did not intend to do so. They also testified that, except for the fact that oil wells were being drilled on the Jones county land, they would never have brought this suit, because the land was not worth as much as the expense of a trip from Hill county to Jones county, except for its oil-bearing qualities. In justification of their refusal to tender back to appellant this excess money, the contention is made that the Jones county land was in nowise involved in their trade with appellant; that they never contracted with appellant regarding the Jones county land, but only regarding the Fisher county land; that there was no connection between the two; and that, if appellant desired the return of any excess money which he paid them for the Fisher county land, he should have prayed for it in his petition in an action for money had and received.

To our minds this is not the correct view of this transaction. Appellees brought this suit in equity on the ground that a deed executed by them did not speak the real truth, and the effect of their suit was so to reform the deed as to make it speak the truth. It would be, to our minds, manifestly unjust to permit appellees to have this transaction corrected only in so far as such correction benefited them, while at the same time permitting them to retain the benefits of the contract upon which the deed was based, and to which they were not by their own testimony entitled. Appellant might not have been willing to pay $14.25 an acre for the Fisher county land, and the effect of this decree is to compel him to purchase that land at that price, and to create for the parties a contract which no party testified was made between them, and which contract was greatly to the benefit of appellees.

[2] The only authority which we think necessary to support this conclusion is the familiar equity maxim: "He who seeks equity must do equity"; but the following cases, among a great many others, support it: De Perez v. Everett, 73 Tex. 431, 11 S. W. 388; Grundy v. Greene (Tex. Civ. App.) 207 S. W. 964.

In support of their right to refuse to tender back, appellees rely upon the case of Oar v. Davis, 105 Tex. 479, 151 S. W. 794, and the opinion of the Court of Civil Appeals in the same case reported in 135 S. W. 710. There is a very marked distinction between the facts in that case and the facts in this case. One sentence taken from the opinion of the Supreme Court discloses this distinction:

"No consideration was paid by said Oar for said land, but he paid only the amount agreed upon for the three tracts they agreed to sell

him, which amount was adequate compensation for plaintiffs' interest in those tracts, but grossly inadequate as a consideration for all the land embraced in the deeds."

Had appellees' testimony in this case disclosed that appellant paid them only the agreed consideration for the Fisher county land, they might have justified themselves in refusing to tender back; but it would be a strange departure from the rules of equity to relieve them from that duty when, by their own testimony, they were paid more than twice the amount to which they, under their contract, were entitled.

[3] An examination of the issues submitted by the court to the jury discloses that no element of fraud was submitted to or determined by the jury. Neither was appellees' cause of action as based upon a mutual mistake submitted. The jury determined only that appellees did not intend to convey to appellant their interest in the Jones county tract. This issue submits only the question of a unilateral mistake, which was neither pleaded nor relied upon as a ground for cancellation.

It is urged by appellees that under article 2190 of the Revised Statutes of 1925, it is the duty of this court to presume that the trial court found in their favor on the issues of fraud and mutual mistake, since appellant did not request any issues to be submitted on those matters. We have many times refused to give article 2190 the construction contended for by appellees. To do so would, in our minds, be to practically destroy the right of trial by jury. At least three times within the past year this court has passed upon this question. In the case of Southwest National Bank of Dallas v. Hill (Tex. Civ. App.) 297 S. W. 1096 (writ of error refused), it was carefully considered and the leading authorities thereon cited. In the recent case of Ratcliffe v. Ormsby (Tex. Civ. App.) 298 S. W. 930, we again considered the question, and held that it was one of fundamental error. In the still later case of Saunders v. Guinn (1 S.W.[2d] 363), we held that the submission of an issue in a manner very similar to the one under consideration was not at all a submission of an element of fraud.

[4] It was not the duty of appellant to request the court to submit appellees' cause of action to the jury, and the failure of appellees to request its submission, or to object to the court's charge for a failure to do so, constituted a waiver by appellees of both mutual mistake and fraud. Kirby Lumber Co. v. Conn et al., 114 Tex. 104, 263 S. W. 902; San Antonio Public Service Co. v. Tracy (Tex. Civ. App.) 221 S. W. 637; Waybourn v. Spurlock (Tex. Civ. App.) 281 S. W. 587.

[5] The trial judge made the following findings of fact with reference to limitation, and embodied such findings in the judgment:

"The court finds that the defendant, J. R. Walling, has had peaceable, adverse, continuous open and notorious possession of the south one-half of section No. 19, block No. 19, of the T. & P. Ry. Co. lands in Jones county, Tex., involved in this suit, occupying the same continuously with his family as his homestead, cultivating, using and enjoying the same, duly paying all taxes thereon regularly, without delinquency, and claiming under a deed duly registered and recorded in the county clerk's office, and in the public deed records of Jones county, Tex., for more than five years next before the institution of this suit, same being the deed executed and delivered to him by Mrs. M. E. Walling, as grantor, to J. R. Walling, as grantee, and recorded in volume 99, p. 203, Deed Records of Jones County, Tex."

Appellant insists that under this finding judgment should be rendered in his favor on his plea of the five years' statute of limitation (Rev. St. 1925, art. 5509). We do not deem a discussion of this question profitable. The opinion of the Commission of Appeals in the case of Deaton v. Rush, 113 Tex. 176, 252 S. W. 1025, adopted by the Supreme Court, goes fully into the question, and holds that a vendor's cause of action for the recovery of land, the deed to which was obtained by fraud, does not accrue until after the cancellation of such deed, and that limitation under the five years' statute does not begin to run against the vendor until such deed is canceled. No right to maintain an action for the land exists until the deed is set aside. Judgment for appellant cannot be rendered on this ground.

[6] Appellant insists that the judgment of the trial court should be reversed and here rendered in his favor upon another ground. The evidence discloses that, after appellant acquired the deed from appellees, he deeded the land to his mother; that other heirs of appellant's father also deeded their interest to their mother; and that thereafter appellant's mother deeded the entire tract to him. Appellant's mother was an innocent purchaser without any notice of the alleged fraud, and the argument is made here that appellant is protected by the bona fides of his mother, whose title he acquired.

[7] It is a general rule applied in many Texas cases that if a second purchaser with notice acquires title from a former purchaser who was without notice and bona fide, he succeeds to all the rights of his immediate grantor. But this general rule has a well established exception. This exception is stated in Pomeroy's Equity Jurisprudence (4th Ed.) vol. 2, § 754, as follows:

"This exception is that such a title cannot be conveyed, free from the prior equities, back to a former owner who was charged with notice. If A holding a title affected with notice, conveys to B, a bona fide purchaser, and afterwards takes a reconveyance to himself, all the equities revive and attach to the land in his hands, since the doctrine requires not only val-

uable consideration and absence of notice, but also good faith."

This rule is well supported by the many authorities cited thereunder. One of those authorities, Rogers v. Lindsey, 13 How. (54 U. S.) 441, 14 L. Ed. 215, states the rule and exception in this language:

"A purchaser with notice may protect himself by obtaining the title of a purchaser for a valuable consideration without notice, unless he be the original party to the fraud. The bona fide purchase purges away the equity from the title in the hands of all persons who may obtain a derivative title, except it be that of the original party, whose conscience stands bound by the violation of the trust, and a meditated fraud."

We cannot render judgment for appellant on this ground.

[8] We overrule the contention of appellant that the case should be rendered on his plea of four years' limitation. Appellees alleged fraud in their petition, and the jury found that appellees discovered, or could have discovered by reasonable diligence, that the Jones county land was included in their deed on or about September, 1926. It is well established that in a suit based upon fraud, limitation will not run until the fraud is discovered, or by reasonable diligence should have been discovered. Burney v. Burney (Tex. Civ. App.) 261 S. W. 182, and authorities there cited.

The other questions discussed in appellant's brief will probably not arise upon another trial, and need not, therefore, be disposed of in this opinion.

The judgment of the trial court will be reversed and the cause remanded.