## ROBERT OIL CORPORATION v. GARRETT.
### (No. 603.)

Court of Civil Appeals of Texas. Eastland.
Oct. 18, 1929.

Rehearing Denied Dec. 13, 1929.

and John W. Mackey, of Breckenridge, for appellant.

C. J. O'Connor and Frank S. Roberts, both of Breckenridge, for appellee.

FUNDERBURK, J. This is a suit brought by appellee against appellant to recover damages for personal injuries alleged to have resulted from a number of different acts of negligence of the defendant, its agents, servants, and employees. It was alleged that on or about the 27th day of January, 1927, at about 7 o'clock p. m., the plaintiff while walking west on Walker street upon a public highway in the city of Breckenridge, was run down by the defendant, acting through one of its agents, servants, and employees, while driving an automobile belonging to the defendant, in the conduct of defendant's business, and for defendant's benefit, which said employee was then and there driving said automobile at an excessive rate of speed, to wit, about 60 miles per hour, upon said street and highway, traveling west upon said highway or street, and upon a part of such highway or street that was paved, and at a point where the plaintiff was plainly visible to the driver of said automobile for a distance of one-half mile or more; that, plaintiff being on a lawful mission, and taking due care for his own safety, and walking along the north side of said street, about 6 or 7 feet from the pavement, and where pedestrians had the right to walk, said pavement being 22 feet wide all along said street, said driver of said automobile negligently, carelessly, and recklessly drove said automobile off said pavement and into the plaintiff where he was walking 6 or 7 feet from said pavement, causing the injuries complained of.

Plaintiff further alleged that the automobile which struck and injured him was owned by the defendant and was being used by, run and operated by, and in the possession and under the control of, H. L. Peterman as the servant, agent, and employee of the defendant; that said H. L. Peterman was in the employ of said Robert Oil Corporation, and was accustomed to use and drive said automobile which struck and injured plaintiff, and that he was driving and using said automobile with the permission of said Robert Oil Corporation; that said automobile was a Chrysler roadster, six-cylinder automobile; that, at the time said automobile was driven into and struck the plaintiff and injured him, there was another person in said automobile with said H. L. Peterman, but plaintiff alleged that the name of the other said person is unknown to plaintiff, but that he was in said automobile at the instance of and with the consent of defendant, and as defendant's agent, servant, and employee.

It is further alleged that said H. L. Peterman and said other person were using said automobile at the time of its collision with

Thompson, Knight, Baker & Harris, G. O. Bateman, and J. H. Ranson, all of Dallas,

plaintiff in the manner and for the purposes for which the defendant had purchased the same, to wit, as a vehicle for the convenience and use of its employees in its·business and for the comfort and pleasure of said employees and their friends and co-workers, and that the defendant had dedicated said automobile to said purposes, and said employees were using, driving, and operating same with the consent of defendant at the time they struck and injured plaintiff with said automobile, and that defendant occupied the status of master in said relationship.

Following the foregoing general allegations, plaintiff alleged seven specific grounds of negligence, as follows:

"(a) In permitting said employees or either of them to use, drive and operate an automobile belonging to defendant.

"(b) In permitting said employee to drive said automobile at an excessive rate of speed and in a careless and reckless manner in that he left the paving of said street or highway and drove out where the plaintiff was walking and struck the plaintiff while at a place where the highway paving was at least eighteen feet wide and was not obstructed by any object either stationary or moving.

"(c) In that said employee failed to stop said automobile and failed to slacken the speed thereof when plaintiff was discovered by the driver thereof, in time to have stopped said automobile, and in time to have turned and missed the plaintiff and in failing after he had discovered the peril of plaintiff, to either stop, check or turn said automobile, and failing to make any effort, whatsoever, to avoid injuring the plaintiff, after the driver of said automobile discovered the plaintiff, or by exercise of reasonable care, could have discovered him.

"(d) In that said employee failed to stop or attempt to stop said automobile, and failed to slacken the speed thereof, after the said automobile had struck the plaintiff and knocked him off the ground and on top of the hood and fender and running board. That he had and knew that he had struck the plaintiff and if he had stopped said automobile or slackened the same, plaintiff would not have suffered certain of the injuries as herein alleged. And plaintiff further alleges that the said employee was further negligent in that he failed, either at the time the plaintiff was struck or at the time plaintiff was thrown from said automobile, and he received the injuries as herein alleged, to stop or offer to stop, or slacken the speed of said automobile, after he knew that he had struck and injured plaintiff.

"(e) In that said employee was operating and driving said automobile at a rate of speed in excess of twenty miles per hour on a public highway or street within the limits of the City of Breckenridge, Texas.

"(f) In that said employee was negligent in driving or operating the automobile in question upon a public highway of the State of Texas, while passing other persons, to-wit, the plaintiff, at such a rate of speed as to endanger the life and limb of said persons and safety of them.

"(g) In that said employee was negligent in that he failed to keep a proper lookout for the plaintiff and to slow down and slacken his speed at the time he entered the city limits of the city of Breckenridge, and so as to avoid striking the plaintiff, the plaintiff at said time being a pedestrian on the highway in plain view of said employee. And plaintiff alleges that the said driver of said automobile saw the plaintiff before he struck him, or by the exercise of ordinary care, he could and should have seen plaintiff, and that said driver discovered the perilous position of plaintiff in time to have avoided striking him, either by slowing down his speed, or by turning aside so as not to strike him."

These specific allegations of negligence were followed by general allegations to the effect that each and all were the acts of the defendant and the proximate cause of the injuries and damages alleged. The prayer was for judgment for damages in the aggregate sum of $45,000.

The defendant answered by general denial and a plea of contributory negligence. The cause was submitted to a jury upon special issues, as follows:

"Special issue No. 1: At the time the automobile in question struck the plaintiff, was it being driven by or under the direction of H. L. Peterman? Answer 'Yes' or 'No.'

"Special issue No. 2: Was the striking of the plaintiff by the automobile in question due to the negligence of the driver thereof? Answer 'Yes' or 'No.'

"Special issue No. 3: Was the striking of the plaintiff by the automobile in question, the direct and proximate cause of the injuries of the plaintiff? Answer 'Yes' or 'No.'

"Special issue No. 4: At the time the automobile in question struck the plaintiff was same being driven within the scope of the authority of H. L. Peterman, as superintendent of the defendant Robert Oil Corporation? Answer 'Yes' or 'No.'

"Special issue No. 5: Was the plaintiff guilty of contributory negligence in walking at the place he did walk on the road at the time he was struck by the automobile in question? Answer 'Yes' or 'No.'

"Special issue No. 6: What sum of money, if paid now in cash, would adequately compensate plaintiff for the injuries received by him when he was struck by the automobile in question? Answer in terms of dollars and cents."

The jury answered special issues 1, 2, 3, and 4 "Yes," special issue No. 5, "No," and No. 6 that the amount of damages was $13,250. From a judgment rendered upon the verdict of the jury in favor of the plaintiff, the de-

fendant, Robert Oil Corporation, has appealed.

■ Appellant bases its contention that the judgment of the trial court is erroneous, and should be reversed upon sixteen propositions. It would result in unduly prolonging this opinion to undertake to discuss these propositions in detail, and to set out the reasons why we think that they cannot be sustained, except as to the one hereafter specially mentioned. We will say a word, however, with reference to the contention made in a number of propositions, and particularly the first, that there was no evidence that an employee of defendant was driving or operating the automobile at the time and place the automobile struck the plaintiff. We regard the evidence as conclusive that it was defendant's automobile that struck the plaintiff and that Peterman was a servant of defendant, with the possession of the car intrusted to him for use by him in the conduct of defendant's business. Evidence that Peterman was driving the car at the time it struck the plaintiff consists wholly of the testimony of plaintiff to the effect that, when he was struck and thrown upon the hood, with his face turned back toward and near the windshield, he saw Peterman in the car, together with another person.

Appellant insists that this testimony of plaintiff should be treated as no evidence that Peterman was in the car, because of plaintiff's further testimony that some four months afterwards he had a vision of seeing Peterman and the other man in the car when he was thrown upon the hood, the vision recalling the scene of the accident with such clarity as to enable plaintiff to testify to the kind of hat, tie, coat, etc., that Peterman was wearing. We do not think that we would be justified in interpreting the plaintiff's testimony as showing that the facts testified to were wholly dependent upon the vision. His story is susceptible of the construction that he saw Peterman with such distinctness as to be able to recognize him six months afterwards, and that the so-called vision was but a vivid recalling of the original experience. In view of the undisputed testimony that the windshield of the car was muddy, that there was a sprinkle of rain at the time the accident happened, and that it was dark and the curtains of the car were up, a rather serious question is presented of the sufficiency of any evidence to show that Peterman was in the car, but, after careful consideration, we have reached the conclusion that, to hold that there was no evidence, or that the evidence was insufficient, would probably be encroaching upon the province of the jury. We have therefore concluded it our duty to overrule appellant's several propositions that present this point.

■ By its sixth proposition the appellant contends that the court should not have submitted special issue No. 1 over its objection, pointing out that, there being no evidence that the automobile in question was, at the time it struck plaintiff, being driven by H. L. Peterman, and there being no pleading or evidence that said automobile was, at said time, being driven under the direction of H. L. Peterman, the issue submitted was not raised by the pleadings and the evidence. While we are not prepared to hold, as said above, that there was no evidence that the automobile was being driven by H. L. Peterman, it is certain enough that there was no direct evidence to that effect. Plaintiff's testimony that he saw Peterman in the car stops short of being evidence that Peterman was driving the car. He said he could not tell which of the two persons in the car was driving. It is therefore only by the employment of a presumption that it can be said that the car was being driven by Peterman. This renders material, we think, what might not, under other circumstances, be so; namely, the submission to the jury whether or not the car was being driven under the direction of Peterman, an issue not made by the pleadings or the evidence. The issue erroneously assumes that the rights of the defendant are not affected by the question of whether the car was being driven by Peterman or by some one under his direction. The special issue did not ask the jury to find whether Peterman was driving the car, nor does it ask them to find whether it was being driven by any one under his direction. The jury was only asked to say whether it was one or the other, without saying which. It is easily conceivable that the jury could answer the question, although they might have never been able to agree either that it was Peterman driving or that the car was being driven by some one under his direction. But we think it was important to have the jury find whether or not it was Peterman driving the car. Since the interrogatory permitted the jury to return an affirmative answer based upon a matter neither pleaded nor supported by evidence, and entirely consistent with the fact that Peterman was not driving the car, it seems to us that appellant's objection to the submission of the special issue was a good objection that should have been sustained.

■ It will, no doubt, be answered that it was, in fact, immaterial whether Peterman was driving the automobile or whether it was being driven by some one under his direction. Campbell v. Trimble, 75 Tex. 270, 12 S. W. 863, might be cited as affording some authority for such contention. But whether the master is liable for an act or omission of one acting under direction of a servant will depend greatly upon the nature of the duty of the master which is breached, as well as the manner and circumstances of the directions given by the servant. If Peterman was driving the car himself, the evidence conclusively establishing, as it does, that the car belonged to the defendant, and that Peterman was an em-

ployee of the company, with authority to drive the car, the presumption, in the absence of contrary evidence, would obtain that, at the time of the injuries, he was acting within the scope of his authority. Wright v. Maddox (Tex. Civ. App.) 288 S. W. 560; Studebaker v. Kitts (Tex. Civ. App.) 152 S. W. 464; Floral Co. v. Sheridan (Tex. Civ. App.) 245 S. W. 467.

Such presumption would not arise, at least not necessarily so, if the car was being driven by one not a servant of the defendant, even though under direction of a servant. This results from the elementary principle that a presumption cannot exist which is based solely upon another presumption. 22 C. J. 84; Mo. Pac. Ry. Co. v. Porter, 73 Tex. 304, 11 S. W. 324. If it was plaintiff's purpose to hold the defendant liable on the ground that the car was being driven by some one under the direction of its employee, then it was necessary that such issue be tendered by the pleading and supported by evidence. While it was alleged that the other person in the car was a servant and employee of defendant, there was no evidence whatever to support such allegations. The defendant had the right to tender an issue as to whether, if the car was being driven by some one not a servant of the defendant, but under the direction of one of defendant's servants, it was not within the scope of authority of its employee, Peterman, and this right would be denied the defendant, if its liability is to be predicated upon the issue as submitted to and found by the jury. This much is said to indicate why we think the submission of an issue not made by the pleading must, in this case, be held to be material. There is no need for the citation of authority that such is error. It does not result in all cases, however, that such error requires a reversal, and what has just been said is to indicate the reasons why, in this case, we have concluded the error is material.

We have concluded that there is another error in the judgment that has not been presented for our consideration by any specific assignment or proposition. When there are general allegations of negligence, followed by specific allegations, it is the rule that the specific allegations will control. The specific allegations in the plaintiff's pleading in this case, as set out above, show that the plaintiff sought recovery on about seven independent grounds of negligence. One to the effect that the negligence consisted "in permitting said employees or either of them to use, drive and operate the automobile belonging to defendant," we would have to say, as a matter of law, does not state a ground of actionable negligence. One or more of the grounds consist of negligence based upon the principle of discovered peril. No issue was submitted to the jury and none requested, asking the jury to find the existence of any one or more of the

several grounds of negligence alleged. Special issue No. 2 simply assumed the existence of negligence, and called for a finding whether or not the striking of plaintiff by the automobile was due to such negligence. The issue as thus framed was objectionable for that reason, but, no objection having been urged, it was waived. Special issue No. 3 was not a proper submission of the issue of proximate cause. That the striking of plaintiff by defendant's automobile was the proximate cause of plaintiff's injuries was shown by the uncontroverted evidence. The court should not submit an issue that is established by uncontroverted evidence. Striking the plaintiff by the automobile was not the proximate cause that would render defendant's negligence actionable, but it was one or more of the alleged acts of negligence which resulted in the car striking the plaintiff. But no objection was made to this issue for such reason, and its manner of submission will not be the basis of our holding.

Rev. St. 1925, art. 2190, is mandatory in its requirement that the court shall submit all the issues made by the pleadings when supported by evidence. A judgment which, on the face of the record, is based upon a verdict that does not find all the material issues, is, on the face of the record, erroneous. The statute prescribes a condition under which such error shall not require a reversal. That condition is that, if there be evidence to support the necessary issues not found, they will be presumed to have been found by the court so as to support the judgment. The statute has been held to operate upon each separate and independent ground of recovery and of defense as a unit. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084. It has therefore been held that in a negligence case, wherein judgment is based upon a finding of negligence and damages, a finding of proximate cause would be presumed in support of the judgment. G., C. & S. F. Ry. Co. v. Morris (Tex. Com. App.) 250 S. W. 1017; Morten Investment Co. v. Trevey (Tex. Civ. App.) 8 S.W.(2d) 527. The Beaumont Court of Civil Appeals has held that negligence, when supported by evidence, would be presumed to have been found in support of the judgment. Dallas Hotel Co. v. Davidson (Tex. Civ. App.) 12 S.W.(2d) 633.

In North v. Atlas Brick Co. (Tex. Com. App.) 13 S.W.(2d) 59, 61, Judge Speer, in commenting upon the decision in Ormsby v. Ratcliffe, supra, by way of illustration, pointed out that an independent ground of recovery for negligence consisted of four issues: "(1) The fact alleged, (2) whether the same be negligence, (3) whether such negligence be the proximate cause of injury, and (4) the amount of damage." He then said: "Now, if one or more of such elements, or issues as they are usually denominated, be submitted and the others not submitted nor requested to be sub-

mitted, such issue is not waived, but the court may find, and under the statute is deemed to have found, the unsubmitted issues in such way as to support the judgment." This statement is correct, we think, when, under the facts of a particular case, it can be made applicable. If in a case there be but one ground of negligence relied on, and if the jury does not find whether such facts be negligence, and no issue be submitted calling for the finding of same, then a judgment based upon their finding of proximate cause and damage alone will not be reversed, if there be evidence to support the existence of the facts claimed to constitute negligence or that defendant was negligent. Likewise, we think if there be several grounds of negligence alleged, and no finding of the facts, but there is some evidence to support each and every one of such grounds, then some one or more grounds will be presumed to have been found to support the judgment. It should likewise, no doubt, be held in such a case, if the issues of proximate cause and damages are so framed as to identify any particular acts claimed to constitute an independent ground of negligence, and there be evidence to support such a finding, then the finding will be presumed. But, where there are several independent grounds of negligence alleged, some of them insufficient as a matter of law, some presenting a question of negligence based upon discovered peril, and the others on still other grounds, some supported by evidence and some not, then we are unable to say that there is some evidence to support a finding of the particular facts constituting any particular one or more of the several acts of negligence charged.

 It is necessary to read the statement of facts, not to discover the existence of fundamental error, for error appears of record, from the fact alone of the insufficiency of the verdict to support the judgment. We are only required to consult the statement of facts to determine whether the error manifest of record is such as must result in a judgment of reversal. If, in doing so, we bear in mind that any independent ground of negligence as to which none of the issues were submitted nor requested must be deemed to have been waived (Ormsby v. Ratcliffe, supra), it results that, upon our reading the statement of facts, we are unable to refer the evidence to any particular acts of negligence comprised within a single independent ground of recovery. We are wholly without means of determining which of the several independent grounds of recovery must be deemed to have been waived and which, if any, have not. We are therefore unable to determine that there is evidence to support the particular issues which were omitted and not found by the jury, but which are necessary to support the judgment. For us, upon reading the statement of facts, to conclude that there was evidence to support some one of the several grounds, without any means of knowing that same was not in-

cluded in those waived, would be practically to deprive the defendant of the right of trial by jury. The condition would result so forcibly pointed out by Judge Fly in S. A. Public Service Co. v. Tracy (Tex. Civ. App.) 221 S. W. 637, 638, wherein it was said:

"If a plaintiff can allege separate acts of negligence, acquiesce in the submission of only one of them to a jury, and then sustain the verdict on a ground of negligence upon which the jury did not pass, but which it is presumed was found by the judge, jury trial would become a farce, and the ultimate decision on facts as to other grounds of negligence would rest with the judge."

 We have therefore concluded that, since the verdict of the jury upon which the judgment is based does not show a finding of the facts claimed to constitute any ground of negligence, there being several grounds of negligence alleged, some insufficient as a question of law, and some not supported by the evidence, we are unable to indulge any presumption that will save the judgment from the vice of fundamental error.

The disposition of the case required by the conclusions above expressed renders it unnecessary to notice other assignments, as, for instance, those asserting error based upon misconduct of the jury. There is no reason to apprehend that upon another trial the same questions will arise.

For the reasons discussed, the judgment of the trial court will be reversed, and the cause be remanded for another trial.

HICKMAN, C. J., disqualified and not sitting.

### On Rehearing.

FUNDERBURK, J. Appellee in his motion for rehearing strongly emphasizes the contention that the jury's answer to special issue No. 4, wherein they found that the defendant's automobile was being driven at the time of the accident within the scope of the authority of its superintendent, Peterman, renders immaterial and shows to be harmless the error pointed out in the original opinion with reference to the submission of special issue No. 1. To this we are unable to agree. In order to authorize the submission of special issue No. 4 it was necessary that there be some evidence to support the finding called for. If Peterman was driving the car, then there was a presumption justifying the submission of the issue. But, if some one else was driving the car, and that one not shown by any evidence to be an employee of the defendant, then there was no presumption and no evidence justifying the submission of special issue No. 4. It is true appellant made no objection to the submission of special issue No. 4. This fact is urged as a part of appellee's argument. But, had special issue No. 1 called for a finding as to whether or not Peterman was driving the car, then special

issue No. 4 would have been correct. Appellant made proper objection to the submission of special issue No. 1, which objection we have sustained. We cannot agree that for the purpose of holding the error harmless appellant was under the duty to object to the submission of special issue No. 4, if indeed any objection that might have been made would have been valid. The real fault was in issue No. 1 and not in issue No. 4. There was no finding of the jury that Peterman was even in the car at the time of the collision with plaintiff. Whether he was or not was a strongly controverted fact, with, to say the least, very slight and inconclusive evidence to show that he was. If he was in the car, there is no evidence whatever that he was driving same, nor that the car was being driven by a servant or employee of the defendant.

There was neither pleading nor evidence that it was being driven under the direction of Peterman. If such was a fact, then it is one that arises from presumption based upon the issuable fact that Peterman was in the car, and the fact that the car had been intrusted to his possession for use in his employer's business. If the jury's answer to special issue No. 1 was based upon a finding that the car was being driven by some one, not an employee of defendant, but under the direction of Peterman—a finding which under the wording of the question the jury was authorized to make—then, if it be conceded that such finding would be supported by the presumption just mentioned, it would result that the jury's answer to special issue No. 4 was unauthorized. This for the reason that in such case there would be no presumption that the car was being driven within the scope of Peterman's employment, since such presumption would necessarily have to be based upon the other presumption that he was directing the driving. As said in the original opinion, it is not permissible to base one presumption upon another.

The court, in submitting special issue No. 1, indicated that it was immaterial whether the car was being driven by Peterman or by some one under his direction. Such being the case, it is impossible to say that the jury did not base their answer to special issue No. 4 upon that understanding; and, if they did, of course their answer cannot be used to show that by necessary implication they found that Peterman was himself driving the car.

Defendant having timely objected and pointed out wherein there was error in submitting special issue No. 1, it cannot be held, we think, that it, in order to minimize the harm, was under the further duty to object to special issue No. 4, which, had the first objection been obviated, would have rendered special issue No. 4 wholly unobjectionable.

We have therefore concluded that the motion for rehearing should be overruled, and it is accordingly so ordered.